**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jacquelin S. Bennett, Genevieve S. Felder, and Kathleen S. Turner, individually, as Co-Trustees and Beneficiaries of the Marital Trust and the Qualified Terminable Interest Trust created by the Thomas Stevenson Will, and Jacquelin S. Bennett and Kathleen S. Turner, as Co-Personal Representatives on behalf of the Estate of Jacquelin K. Stevenson, Appellants,

v.

T. Heyward Carter, Jr.; Evans Carter, Kunes & Bennett, P.A.; Douglas Capital Management, Inc; Dixon Hughes f/k/a Pratt-Thomas Gumb & Co., P.A.; and Lynne L. Kerrison, Defendants,

Of Whom Dixon-Hughes f/k/a Pratt-Thomas Gumb & Co., P.A., and Lynne L. Kerrison are the Respondents.

Appellate Case No. 2013-001893

———————

Appeal From Charleston County
Roger M. Young, Sr., Circuit Court Judge

———————

Unpublished Opinion No. 2015-UP-491
Heard June 3, 2015 – Filed October 14, 2015

———————

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED**

———————

Keith M. Babcock, A. Camden Lewis, James Mixon
Griffin and Ariail Elizabeth King, all of Lewis Babcock
& Griffin, LLP, of Columbia, for Appellants.

M. Dawes Cooke, Jr., of Barnwell Whaley Patterson &
Helms, LLC, of Charleston, and Frederick K. Sharpless,
of Greensboro, N.C., for Respondents.

---

**HUFF, J.:** Jacquelin S. Bennett, Genevieve S. Felder, and Kathleen S. Turner, individually, as co-trustees and beneficiaries of the Marital Trust and the Qualified Terminable Interest Trust (QTIP) created by the Thomas Stevenson Will, and Jacquelin S. Bennett and Kathleen S. Turner, as co-personal representatives on behalf of the estate of Jacquelin K. Stevenson (collectively Appellants) appeal the trial court's order granting summary judgment to Lynne Kerrison and her accounting firm Dixon-Hughes (collectively Respondents). We affirm in part, reverse in part, and remand.

1. We agree with Appellants' argument the trial court erred in holding the statute of limitations began to run on their claims on April 19, 2006. We find the trial court erred by holding Appellants were bound by Kathleen S. Turner's response to the request for admission: "Thomas Stevenson informed you that he and Daniel Stevenson removed money from the trust on April 19, 2006." *See* Rule 36(b), SCRCP ("Any matter admitted under this rule is conclusively established unless the court on motion permits withdrawal or amendment of the admission."); *Scott v. Greenville Hous. Auth.*, 353 S.C. 639, 651, 579 S.E.2d 151, 157 (Ct. App. 2003) ("[A] trial court may allow a party to amend or withdraw its answers to a request to admit when: (1) the presentation of the merits is furthered by the amendment; and (2) the party who obtained the admission cannot demonstrate prejudice because of the amendment." (citation and internal quotation marks omitted)); *id.* at 648, 579 S.E.2d at 155-56 ("The efficacy of these admissions is akin to the doctrine of judicial estoppel . . . ."). Not only is this request for admission ambiguous and the last of 171 requests, it is in direct conflict with Kathleen's deposition testimony. Whether due to the sheer number of requests for admission or the confusing language of this request, Kathleen's response did not reflect her actual position that Thomas did not discuss the withdrawals of money at this meeting. Because the record contains conflicting evidence, presentation of the merits would be furthered by the withdrawal or amendment of the response. In addition, Respondents are not prejudiced by the withdrawal. Respondents were aware of Kathleen's deposition

testimony and Appellants argued the contradictory testimony made summary judgment inappropriate. No expert witness relied on Kathleen's admission in forming an opinion. We also believe the trial court erred in finding the motion to amend or withdraw the response was untimely. The court informed the parties of its decision to grant summary judgment on June 10, 2013. Respondents submitted the proposed order on June 13, 2013. Appellants filed their motion to amend or withdraw the response three days later. The trial court did not file its order until July 3, 2013. *See Bowman v. Richland Mem'l Hosp.*, 335 S.C. 88, 91, 515 S.E.2d 259, 260 (Ct. App. 1999) ("An order is not final until it is written and entered by the clerk of court.").

2. We find without the admission, only a conflict in the testimony remains with Thomas testifying he told Kathleen about his and Daniel's withdrawals of money from the trusts and Kathleen's denial that the withdrawals were discussed. *See Moriarty v. Garden Sanctuary Church of God*, 341 S.C. 320, 338, 534 S.E.2d 672, 681 (2000) ("Application of the discovery rule . . . , as well as the determination of the date the statute began to run in a particular case, are questions of fact for the jury when the parties present conflicting evidence."); *L & W Wholesale, Inc. v. Gore*, 305 S.C. 250, 253, 407 S.E.2d 658, 659 (Ct. App. 1991) (stating the trial court does not weigh conflicting evidence or make credibility determinations during consideration of summary judgment); *Hancock v. Mid-South Mgmt. Co.*, 381 S.C. 326, 330, 673 S.E.2d 801, 803 (2009) ("[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment.")

3. We agree with Appellants' argument the trial court erred in holding the statute of limitations began to run May 21, 2003. *See Moriarty*, 341 S.C. at 338, 534 S.E.2d at 681 ("Application of the discovery rule . . . , as well as the determination of the date the statute began to run in a particular case, are questions of fact for the jury when the parties present conflicting evidence."); *L & W Wholesale, Inc.*, 305 S.C. at 253, 407 S.E.2d at 659 (stating the trial court does not weigh conflicting evidence or make credibility determinations during consideration of summary judgment); *Hancock*, 381 S.C. at 330, 673 S.E.2d at 803 ("[I]n cases applying the preponderance of the evidence burden of proof, the non-moving party is only required to submit a mere scintilla of evidence in order to withstand a motion for summary judgment."). Thomas testified that during the May 21, 2003 meeting he showed Kathleen a piece of paper detailing the assets of the Trusts, including the "investments" in his and Daniel's companies. Kathleen testified Thomas looked down at a piece of paper in his lap and mumbled so badly she did not understand a

word he said.  Although Kathleen indicated she thought something was very wrong, nothing about the meeting would raise a red flag concerning the trusts if she truly was unable to hear what Thomas said.  We find the question of whether Kathleen had notice of the loans on this date involves an issue of credibility and, thus, was inappropriate for summary judgment.

4.  We agree with Appellants' argument the trial court erred in granting summary judgment on their individual claim for aiding and abetting a breach of fiduciary duty.  We find the statute of limitations did not begin to run in October 2001 on their claims because Kerrison's notice to Heyward Carter, who was the attorney for Jacquelin K. Stevenson (Mother), could not serve as notice to Appellants individually as he was not their attorney.  We also find Appellants presented sufficient evidence to withstand summary judgment.  *See Future Group, II v. Nationsbank*, 324 S.C. 89, 99, 478 S.E.2d 45, 50 (1996) (stating the elements for the cause of action for aiding and abetting a breach of fiduciary duty are: "(1) a breach of a fiduciary duty owed to the plaintiff[;] (2) the defendant's knowing participation in the breach[;] and (3) damages"); *id.* ("The gravamen of the claim is the defendant's knowing participation in the fiduciary's breach.").  Thomas and Daniel, as trustees, owed the beneficiaries of the trusts a fiduciary duty.[1] *See Univ. of S. Cal. v. Moran*, 365 S.C. 270, 281, 617 S.E.2d 135, 141 (Ct. App. 2005) (stating a trustee "has a fiduciary obligation to administer the trust in the best interests of the trust beneficiaries").  Kerrison admitted she believed the withdrawals of money from the trusts by Thomas and Daniel were not proper and one "could probably call" the transactions self-dealing.  Upon her discovery of the withdrawals from the trusts, she questioned the propriety of the transactions, contacted Carter, and met with Thomas and Daniel, who were advised to disclose the withdrawals to their siblings.  She admitted she was aware Thomas and Daniel continued to remove funds from the trusts until the spring of 2006.  In addition to taking no further action regarding Thomas's and Daniel's activities, Kerrison's firm actually had possession of the trust checkbooks and wrote the checks for Thomas's and Daniel's withdrawals of funds from the trusts.  We find Appellants presented at least a scintilla of evidence from which a jury could infer Respondents knowingly participated in Thomas's and Daniel's breach of their fiduciary duty.

---

[1] *See Holcombe-Burdette v. Bank of Am.*, 371 S.C. 648, 659, 640 S.E.2d 480, 485 (Ct. App. 2006) ("It is not the uncertainty of enjoyment in the future, but the uncertainty of the right to that enjoyment which marks the difference between a vested and a contingent interest.").

5.  We find Appellants' argument concerning a breach of fiduciary duty is conclusory and, therefore, abandoned. *See First Sav. Bank v. McLean*, 314 S.C. 361, 363, 444 S.E.2d 513, 514 (1994) (noting an issue is deemed abandoned when an appellant "fails to provide arguments or supporting authority for his assertion"); *Eaddy v. Smurfit–Stone Container Corp.*, 355 S.C. 154, 164, 584 S.E.2d 390, 396 (Ct. App. 2003) ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not preserved for our review.").

6.  We find Appellants' argument the trial court erred in granting summary judgment on their individual claim for professional negligence is conclusory and, therefore, abandoned. *See First Sav. Bank*, 314 S.C. at 363, 444 S.E.2d at 514 (noting an issue is deemed abandoned where an appellant "fails to provide arguments or supporting authority for his assertion"); *Eaddy*, 355 S.C. at 164, 584 S.E.2d at 396 ("[S]hort, conclusory statements made without supporting authority are deemed abandoned on appeal and therefore not preserved for our review."). In their brief, Appellants focus on Kathleen's role as the holder of Mother's power of attorney. They fail to develop or support with authority any argument on a duty owed to Appellants individually as Appellants were not Respondents' clients. When questioned at oral argument, Appellants only offered as support for their claims the supreme court's recent case of *Fabian v. Lindsay*, in which the court affirmatively recognized "a cause of action, in both tort and contract, by a third-party beneficiary of an existing will or estate planning document against a lawyer whose drafting error defeats or diminishes the client's intent." 410 S.C. 475, 492, 765 S.E.2d 132, 141 (2014). We do not see how this case is applicable as Appellants have not argued they are third-party beneficiaries in Respondents' provision of accounting services to Mother and Thomas and Daniel as trustees. *See id.* at 490, 765 S.E.2d at 140 (finding the "intent in estate planning is directly and inescapably for the benefit of the third-party beneficiaries"); *id.* ("Thus, imposing an avenue for recourse in the beneficiary, where the client is deceased, is effectively enforcing the *client's intent*, and the third party is in privity with the attorney. It is the breach of the attorney's duty to the client that is the actionable conduct in these cases.").

7.  We disagree with Appellants' argument the trial court erred in holding notice to Carter started the running of the statute of limitations on their remaining claims. *See Crystal Ice Co. of Columbia, Inc. v. First Colonial Corp.*, 273 S.C. 306, 309, 257 S.E.2d 496, 497 (1979) ("It is well established that a principal is affected with constructive knowledge of all material facts of which his agent receives notice while acting within the scope of his authority."); *id.* at 309, 257 S.E.2d at 498 ("An

equally well-recognized exception to this general rule exists in situations where the agent is acting fraudulently against his principal or for any other reason has an interest in concealing his acquired knowledge from his principal."). The record contains no evidence Carter advanced any interest of his own by not telling Appellants directly about Thomas's and Daniel's withdrawals from the trusts. He was always acting in what he believed was Mother's best interest. Only Mother was his client, and she was competent at the time Kerrison told Carter about Thomas's and Daniel's withdrawals. While Kerrison could have disclosed any information to Kathleen that could have been disclosed to Mother, the power of attorney did not create a separate duty of disclosure to Kathleen independent of disclosures made to Mother while she remained competent. *See* 3 Am. Jur. 2d *Agency* § 20 (2013) ("An attorney-in-fact is essentially an alter ego of the principal and is authorized to act with respect to any and all matters on behalf of the principal with the exception of those acts which by their nature, by public policy, or by contract require personal performance."). Appellants make no other argument challenging the trial court's ruling the statute of limitations began to run no later than October 2001. Accordingly, we find the trial court did not err in finding the statute of limitations barred Appellants' remaining claims.[2]

**AFFIRMED IN PART, REVERSED IN PART, and REMANDED.**

**WILLIAMS, J., concurs.**

**FEW, C.J., concurring in part and dissenting in part:** I agree with the majority's rulings on points 1 through 4. As to points 5 and 6, I agree with the result reached by the majority. As to point 7, I respectfully dissent.

As to points 5 and 6, the majority holds Appellants abandoned the claims. To explain my position, it is necessary to identify the claims the majority is addressing. Appellants contend Kerrison had a fiduciary duty and a duty of due care, each of which required her to take some action based on what she observed while preparing the trust's tax returns in 2001 and subsequent years. Kerrison concedes the existence of some duty. The following dialogue occurred at oral argument:

---

[2] We take no position on whether Respondents satisfied their duty of care by the disclosure to Carter in October 2001. Appellants' argument challenging the trial court's holding regarding the running of the statute of limitations beginning in October 2001 was limited to the issue of the imputation of notice. They did not raise to the trial court or this court the issue of continuous accrual.

> Kerrison: [F]actually, Ms. Kerrison sees in 2001, or as she is preparing the 2000 tax return in 2001, she sees some transactions that she has some questions about. That's uncontested.
>
> The Court: And from that sight there's no question that there arose a duty on her part to take some action.
>
> Kerrison: There arose a duty on her part to take some action, and we'll talk about what that action might be.

This dialogue identifies the questions remaining to be resolved at trial. The question is not whether Kerrison owed a duty *to the beneficiaries*. Appellants maintain a claim against Kerrison based on the duty she concedes exists—a duty to the trusts. As to this duty, the questions are, first, whether the plaintiffs presented evidence to support a factual finding that Kerrison breached her duty to the trusts based on what she observed, and, second, whether the beneficiaries may bring an action for breach of that duty.[3] In my view, the answer to the first question is "yes," and the circuit court did not address the second question. Under the majority's analysis, Appellants' claims that Kerrison owed duties to the beneficiaries are abandoned. However, under the majority's analysis, the two questions I listed above regarding Kerrison's conceded duty to the trusts must be remanded for trial. As to points 5 and 6, therefore, I concur in the result reached by the majority.

As to point 7, the majority holds the statute of limitations began to run in October 2001—the date Kerrison informed Carter of what she observed. I respectfully disagree with that holding. Carter represented only Mother, and specifically denied in his answer he represented the trusts. Kerrison's duty was to the trusts. Because Carter did not represent the trusts, informing Carter did not inform the trusts, and thus did not put the trusts on notice of any claim.

Even under the majority's analysis, however, Appellants' claims against Kerrison for damages resulting from breaches of duty Kerrison committed subsequent to

---

[3] If it makes any difference whether the duty is fiduciary, that question may be resolved at trial.

October 2001 remain viable for trial on remand. This is true for two reasons: first, Kerrison's October 2001 actions could not have put anyone on notice of a claim that had not yet accrued, and second, the circuit court did not address the merits of any claim of the trusts that accrued after October 2001.

As to the statute of limitations for these claims, Kerrison continued to observe misconduct by the trustees after she informed Carter in October 2001. For any claims for damages resulting from misconduct by the trustees that occurred after Kerrison informed Carter what she observed in 2001, the statute of limitations could not begin to run in 2001 because the claims had not yet accrued. Because we are reversing summary judgment as to all subsequent dates the circuit court determined the statute began to run, those claims remain viable for trial on remand.

As to the merits of these claims, the majority does not address the circuit court's finding that "any duty to disclose was satisfied by the October 21, 2001 notice to . . . Carter" because its holding that the statute began to run then made doing so unnecessary. The circuit court made no determination as to whether any subsequent act by Kerrison of informing Carter satisfied Kerrison's duty to the trusts. As to the subsequent actions of Kerrison, the summary judgment analysis would be different from the analysis of her 2001 actions. In my opinion, Kerrison's actions subsequent to October 2001 present questions of fact as to whether she breached her duty to the trusts. By Kerrison's own observation, her October 2001 action of informing Carter was insufficient. When Kerrison saw the trustees committing the same misconduct in 2002 and subsequent years, she knew she had not taken sufficient action to protect the trusts. Her duty of care required her to consider that her previous action had been unsuccessful, and to act accordingly. What additional action should have been taken is a question of fact for a jury.